## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SONYA TAYLOR, Administratrix of      )
The Estate of Devin J. Taylor, and in  )
Her own Right,                       )
                                     )
          Plaintiff,            )    CIVIL ACTION NO. 2005-350J
                                     )
   v.                                )
                                     )    JUDGE GIBSON
ALTOONA AREA SCHOOL DISTRICT,  )
ALTOONA AREA SCHOOL BOARD,      )
SUZANNE RITCHEY, CAROL MYERS,   )
MICHELLE ADAMS, R.N.,                )
                                     )
          Defendants.           )

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### SYNOPSIS

This matter comes before the Court on the Defendants' Motion to Dismiss/Motion for a More

Definite Statement, which has been filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and

12(e). Document No. 8. For the reasons that follow, the Court will grant the Defendants' Motion to

Dismiss in part and grant the Defendants' Motion for a More Definite Statement.

### BACKGROUND

The Plaintiff, Sonya Taylor [hereinafter "Taylor"] commenced this action against the

Defendants, the Altoona Area School District [hereinafter "District"], the Altoona Area School Board

[hereinafter "Board"], Suzanne Ritchey [hereinafter "Ritchey"], Carol Myers [hereinafter "Myers"], and

Michelle Adams, R.N. [hereinafter "Adams"], alleging violations of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Wrongful Death Statute, 42 PA. C.S. § 8301, the Pennsylvania Survival Statute, 42 PA. C.S. § 8302, and the Fourteenth Amendment to the United States Constitution.   Document No. 1, pp. 12-13, ¶¶ 67-73. Taylor seeks redress for the alleged violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  The Defendants have filed a Motion to Dismiss for failure to state a claim upon which relief can be granted with respect to Taylor's constitutional and Pennsylvania law claims. Document No. 8. Since the matter comes before the Court in this context, the allegations contained in Taylor's complaint are assumed to be true. *Anza v. Ideal Steel Supply Corp.*, __U.S.__, 126 S. Ct. 1991, 1994, 164 L. Ed.2d 720, 726 (2006); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475, 119 S. Ct. 2139, 2143, 144 L. Ed.2d 450, 458 (1999).

According to the complaint, Devin J. Taylor was born on October 12, 1994, and was, at all times relevant to this case, a student at Wright Elementary School.   Document No. 1, p. 2, ¶ 6.   Wright Elementary School is under the administration of the Altoona Area School District.   *Id.*   Taylor is Devin's natural mother and the administratrix of his estate.   *Id.*, p. 3, ¶ 7.   She served as Devin's primary physical and legal custodian.   *Id.*   The Board, which consists of the elected directors of the District, is responsible for all of the District's policies.   *Id.* at ¶ 9.   During the period of time at issue, Ritchey was the Principal of Wright Elementary School, Myers was employed as a teacher at the school, and Adams was employed as a school nurse for the District.   *Id.* at ¶¶ 10-12.   All individual defendants have been sued in their personal capacities, and the actions or omissions allegedly committed by them

2

in their official capacities are incorporated within the claims against the District and the Board. *Id.* at ¶ 13.

Devin was identified as a student with disabilities. *Id.*, p. 5, ¶ 22. Specifically, he suffered from asthma and related breathing problems. *Id.* Taylor and the Defendants developed an Individualized Education Plan ("IEP") in order to address all matters pertinent to Devin's disabilities. *Id.* at ¶ 23. Taylor worked with the District to implement a Service Plan for Devin, which provided that he be given an inhaler before exercising, that he be able to utilize a nebulizer with the assistance of the school nurse, and that his parents be notified promptly of any related incidents or actions. *Id.* at ¶¶ 24-25. Taylor provided an inhaler to Myers for Devin's use. *Id.* at ¶ 26. During the relevant period of time, Taylor was enrolled in "Access," which was a state-sponsored health care program. *Id.*, p.6, ¶ 27. Access provided for the acquisition of only one nebulizer, which was maintained at Devin's home. *Id.* Although Taylor asked the District to purchase an additional nebulizer for Devin's use at school, the District refused to do so. *Id.* at ¶¶ 27-28. Taylor saved the necessary funds and purchased a second nebulizer, which was maintained in the nurse's office at Wright Elementary School for Devin's benefit. *Id.* at ¶ 28. According to the complaint, this nebulizer was never utilized to treat Devin's symptoms. *Id.*

The District was provided with an Asthmatic Reaction Procedure document, which detailed the steps to be taken in the event that Devin exhibited symptoms. *Id.* at ¶ 29. Under circumstances in which his breathing, pulse or consciousness were deemed to be decreasing, emergency personnel were to be contacted and CPR was to be performed. *Id.* The District had in its possession all of the necessary documentation from Devin's mother and physician in order to facilitate the important components of

3

the IEP, Service Plan and Asthmatic Reaction Procedure document. *Id.* at ¶ 30.

Devin was in second grade during the 2002/2003 school year. *Id.* at ¶ 31. On Saturday, January 18, 2003, he suffered an acute bronchial asthmatic attack. *Id.* He was airlifted to Children's Hospital in Pittsburgh, where he was hospitalized for approximately one week. *Id.* Taylor went to Wright Elementary School the following week to explain why Devin was absent. *Id.*, p. 7, ¶ 32. On that occasion, she spoke with Devin's second-grade teacher, who informed her that Devin had experienced an episode of arduous breathing and lethargy on Friday, January 17, 2003. *Id.* at ¶ 33. Taylor proceeded to inform the appropriate school personnel of the situation. *Id.* She alleges that she was never notified of the breathing episode and that the school nurse failed to provide treatment to Devin in its aftermath. *Id.* at ¶ 34. Apparently, he walked home after the conclusion of the school day. *Id.*

When Devin entered third grade, Taylor responded to a questionnaire from the District. *Id.* at ¶ 36. This questionnaire, which was related to the IEP, Service Plan, and Asthmatic Reaction Procedure document prepared for the school year, was an attempt by the District to acquire more detailed information about Devin's disabilities. *Id.* In her response, Taylor noted that Devin had been hospitalized during the previous school year, and that he had received treatment in an emergency room on at least ten other occasions during that same year. *Id.*

Myers was Devin's third-grade teacher. *Id.* p. 8, ¶ 38. It is alleged that, during the course of the 2003/2004 school year, Myers regularly failed to administer the prescribed inhaler to Devin before recess and similar strenuous activities. *Id.* at ¶ 37. Apparently, Devin reminded her to give him the inhaler on some occasions. *Id.*

The culmination of this tragic set of circumstances began on September 24, 2003, when Devin

4

informed Myers that he was feeling tired and that he was having breathing difficulties. *Id.*, p. 8, ¶ 38. Myers allegedly told Devin to lay his head on his desk and continued with regularly scheduled activities for the other students. *Id.* Myers allegedly did not administer any medication. *Id.* The school nurse was not in the building at the time, and she was not contacted. *Id.* at ¶ 39. Taylor was not informed of the situation. *Id.* One of the other students noticed that Devin was turning purple. *Id.* at ¶ 40. Apparently, he had stopped breathing. *Id.* After approaching Devin and observing his condition, Myers instructed another student to ask Ritchey to come to the classroom. *Id.* at ¶ 41. Ritchey subsequently arrived and was able to observe Devin's condition. *Id.* at ¶ 43.

At some point, emergency personnel were contacted. *Id.*, p. 9, ¶ 44. While traveling to Wright Elementary School, the emergency medical personnel were informed that Devin had responded positively to resuscitative efforts and had begun to breath again. *Id.* at ¶ 45. It is alleged that, when the emergency responders arrived, Devin was still in a seated position, which was apparently not a position well suited for resuscitative treatment. *Id.* at ¶ 46. When the medical personnel entered the classroom, an unidentified adult, who was standing behind Devin, exclaimed, "His doctor told me to do this!"[1] *Id.* The medical responders immediately placed Devin on the floor and initiated resuscitative efforts. *Id.* at ¶ 47. Taylor alleges that the reported resuscitative attempts prior to the arrival of the emergency medical personnel never actually occurred. *Id.*

Taylor and the school nurse[2] arrived at the school after being informed of the situation. *Id.* at

---

[1] Taylor indicates in her complaint that she believes that the "unidentified adult" standing behind Devin was Myers. Document No. 1, p. 9, ¶ 46.

[2] It is unclear from the language of the complaint whether the school nurse who arrived at the scene was Adams or a different school nurse. Document No. 1, p. 9, ¶ 48.

¶ 48. The school nurse was not scheduled to be at Wright Elementary School at that time, and she and Taylor arrived at approximately the same time. *Id.* They both arrived as emergency responders were preparing to transport Devin to Altoona Hospital. *Id.* Apparently, Taylor was not aware of the severity of the situation until she arrived at the scene and observed the presence of emergency medical vehicles outside and the school nurse frantically approaching the vicinity. *Id.*, pp. 9-10, at ¶¶ 49-50. Thereafter, Devin was transported to Altoona Hospital and resuscitated. *Id.*, p. 10, ¶ 51. He was eventually transported to Children's Hospital in Pittsburgh, where he died on September 27, 2003. *Id.* at ¶¶ 51-52. An autopsy confirmed that the cause of Devin's death was acute bronchial asthma. *Id.* at ¶ 52.

Taylor alleges that the Defendants' conduct during the period of time at issue failed to conform to the applicable legal requirements. Specifically, she contends that the Defendants failed to adhere to Devin's daily medicinal regimen, that they failed to maintain adequately trained personnel to recognize the seriousness of Devin's condition or to initiate resuscitative efforts, that they failed to contact the appropriate individuals about Devin's condition in a timely manner, and that their conduct otherwise demonstrated a reckless indifference and callous disregard for Devin's health. *Id.*, pp. 10-11, ¶¶ 53-66. Taylor asserts that the Defendants' conduct directly caused Devin's death, and that she has suffered emotional stress, anxiety and depression as a result of the tragedy. *Id.*, p. 12, at ¶ 66.

The first three counts of Taylor's complaint allege violations of the IDEA, the Rehabilitation Act, and the ADA. *Id.* at ¶¶ 67-69. Count IV alleges a violation of Devin's rights under the Due Process Clause of the Fourteenth Amendment, and Count V alleges a similar violation of Taylor's own constitutional rights. *Id.*, p. 13, at ¶¶ 70-71. These constitutional claims are brought before the Court pursuant to 42 U.S.C. § 1983. *Id.* In Count VI, Taylor alleges a violation of Pennsylvania's Wrongful

6

Death Statute. *Id.* at ¶ 72. Count VII alleges a violation of Pennsylvania's Survival Statute. *Id.* at ¶ 73.

The Defendants have filed a Motion to Dismiss Counts IV, V, VI and VII for failure to state a claim upon which relief can be granted. Document No. 8, pp. 3-8. The Defendants are also asking the Court to dismiss Ritchey, Myers and Adams, in their personal capacities, from this litigation. *Id.*, pp. 2-3. In the alternative, they have filed a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). *Id.*, p. 9. Finally, the Defendants seek the dismissal of the punitive damages claims against Ritchey, Myers and Adams, in the event that the substantive claims against them are not dismissed altogether.

## DISCUSSION

## A.    THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

Counts IV and V of Taylor's complaint allege violations of the Due Process Clause of the Fourteenth Amendment. Document No. 1, p. 13, ¶¶ 70-71. Count IV alleges a violation of Devin's constitutional rights, and Count V alleges a violation of Taylor's constitutional rights. *Id.* Section 1 of the Fourteenth Amendment states as follows:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., amend. XIV, § 1. Section 5 of the Fourteenth Amendment gives Congress the "power to enforce, by appropriate legislation, the provisions of this article." *Id.*, § 5. Pursuant to this legislative

7

authority, as well as other grants of legislative authority, Congress has enacted 42 U.S.C. § 1983, which

states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Counts IV and V of Taylor's complaint have been brought against the Defendants

pursuant to § 1983. Document No. 1, p. 13, ¶¶ 70-71. Section 1983 does not itself create substantive

rights. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S. Ct. 2570, 2574, 65 L. Ed.2d 653, 661 n.11 (1980).

In order to prevail in an action brought under § 1983, a plaintiff must establish an underlying violation

of federal law. The first step for the Court to take is to identify "the exact contours of the underlying

right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708,

1714, 140 L. Ed.2d 1043, 1055 n.5 (1998).

In this case, Taylor alleges that the Defendants violated substantive due process rights enjoyed

by her and Devin under the Due Process Clause of the Fourteenth Amendment. Document No. 1, p.

13, ¶¶ 70-71. Section 1983 "contains no state-of-mind requirement independent of that necessary to

state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 330, 106

S. Ct. 662, 664, 88 L. Ed.2d 662, 667 (1986). At the outset, it is worth noting that constitutional

8

challenges to executive actions must be analyzed differently than challenges to legislative enactments. In *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed.2d 1043 (1998), the Supreme Court explained that, "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847, 118 S. Ct. at 1717, 140 L. Ed.2d at 1058 n.8 (1998). The Court has refused to adopt reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States[.]" *Daniels*, 474 U.S. at 332, 106 S. Ct. at 665, 88 L. Ed.2d at 669.

In many instances, the conscience-shocking standard discussed in *Lewis* has required a showing that the executive official acted with a purpose or intent to cause harm. *Lewis*, 523 U.S. at 836, 118 S. Ct. at 1711-12, 140 L. Ed.2d at 1051; *Chavez v. Martinez*, 538 U.S. 760, 775, 123 S. Ct. 1994, 2005, 155 L. Ed.2d 984, 999 (2003) (plurality opinion). It is clear that the protections of the Due Process Clause, whether procedural or substantive, are not triggered by a lack of due care on the part of state officials.[3] *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S. Ct. 668, 671, 88 L. Ed.2d 677, 683 (1986).

---

[3] Taylor's complaint is not specific as to whether Counts IV and V are substantive or procedural due process claims. Document No. 1, p. 13, ¶¶ 70-71. Given the arguments raised by Taylor in her brief, however, it is clear that these claims are substantive due process claims. Document No. 13, pp. 9-17. She bases her argument on the conscience-shocking standard discussed in *Lewis*, which is applicable only in substantive due process cases. In *Lewis*, the Court did not address any procedural due process issues, since the respondent did not argue that California law provided no adequate postdeprivation remedy. *Lewis*, 523 U.S. at 840, 118 S. Ct. at 1714, 140 L. Ed.2d at 1054 n.4. In *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed.2d 393 (1984), the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural due process requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533, 104 S. Ct. at 3204, 82 L. Ed.2d at 407. In the procedural due process context, the Fourteenth Amendment does not prohibit mere deprivations, but rather deprivations *without due process of law.* Therefore, in the event of an unauthorized deprivation of a protected liberty or property interest by a state official, a State satisfies its constitutional obligation by providing a remedy. *Albright v. Oliver*, 510 U.S. 266, 281-286, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994)(Kennedy, J., concurring in judgment); *Zinermon v. Burch*, 494 U.S. 113, 139, 110 S. Ct. 975, 990, 108 L. Ed.2d 100, 123 (1990)(O'Connor, J., dissenting); *Parratt v. Taylor*, 451 U.S. 527, 543-544, 101 S. Ct. 1908, 1917, 68 L. Ed.2d 420, 433-

9

"Whether the point of the conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Lewis*, 523 U.S. at 849, 118 S. Ct. at 1718, 140 L. Ed.2d at 1059 (internal quotation marks and citations omitted). In *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006), the U.S. Court of Appeals for the Third Circuit explained that the precise degree of wrongfulness necessary to reach the conscience-shocking level depends on the specific circumstances of a particular case. *Kaucher*, 455 F.3d at 426.

## 1.    Deliberate Indifference

Taylor refers to a standard known as "deliberate indifference" in various portions of her brief. Document No. 13, pp. 9-17. Before proceeding to address the distinct theories advanced by Taylor in support of her constitutional claims, it is necessary to categorize the various applications of the "deliberate indifference" standard. It is not uncommon for the same legal term to be used in more than one context. Nevertheless, where the same term is used to describe different inquiries, it is important for litigants and courts alike to recognize and observe all relevant distinctions. For purposes relevant to this case, the Supreme Court has used the term "deliberate indifference" in three distinct contexts.[4]

---

434 (1981). The State's action is not complete until it either provides or refuses to provide a suitable postdeprivation remedy. *Hudson*, 468 U.S. at 533, 104 S. Ct. at 3204, 82 L. Ed.2d at 407-08. Since Taylor's arguments focus on the conscience-shocking standard discussed in *Lewis* and not on the lack of postdeprivation remedies available under Pennsylvania law, the Court construes Counts IV and V as alleging only substantive due process violations. In any event, while Taylor would not have to show that the Defendants' conduct was "shocking to the conscience" in order toestablish a *deprivation* for procedural due process purposes, she would still need to show more than mere negligence. *Daniels*, 474 U.S. at 334-36, 106 S. Ct. at 666-67, 88 L. Ed.2d at 669-71. For this reason, it is doubtful that Counts IV and V would survive the Defendants' Motion to Dismiss even if they were construed to allege procedural due process violations.

[4] In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed.2d 249 (1989), the Supreme Court did not reach the respondents' "alternative argument that the individual state actors lacked the requisite 'state of mind' to make out a due process violation" because it determined that those actors had no affirmative

The first category of deliberate indifference cases are those which govern the liability of a municipality "for failure to train an employee who causes harm by unconstitutional conduct for which he would be individually liable." *Lewis*, 523 U.S. at 850, 118 S. Ct. at 1718, 140 L. Ed.2d at 1060 n.10; *Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989). This concept has evolved from the Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed.2d 611, 636 (1978), which held that municipalities may not be held liable under § 1983 solely on the basis of a *respondeat superior* theory. Although municipalities are "persons" within the meaning of § 1983, "Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 400, 117 S. Ct. 1382, 1386, 137 L. Ed.2d 626, 636 (1997) (emphasis in original). The Supreme Court, in *Collins v. City of Parker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed.2d 261 (1992), elaborated on the "deliberate indifference" standard in the municipal liability context.[5] The Court emphasized the difference between the standard for establishing municipal liability and the

---

duty to protect one private individual from another in any event. *DeShaney*, 489 U.S. at 202, 109 S.Ct. at 1007, 103 L. Ed.2d at 263 n.10. Although the Defendants in the instant case rely on *DeShaney* in order to establish t hat no "special custodial relationship" existed between the Defendants and Devin, they do not specifically argue that they had no constitutional duty to address Devin's medical needs. Document No. 9, p. 9. For this reason, the Court has no occasion to consider the broader question of whether an omission, without more, can *ever* constitute conscience-shocking conduct outside of the custodial context. The question is a complicated one because the resolution of the federal constitutional issue, in some contexts, depends on the precise contours of state law. *Town of Castle Rock v. Gonzales*, __U.S.__, 125 S. Ct. 2796, 2803-10, 162 L. Ed.2d 658, 669-77 (2005). In the present case, the Court must discuss the applicable levels of culpability because, under Third Circuit precedent, the resolution of Taylor's "state-created danger" argument depends, in part, on whether "a state actor acted with a degree of culpability that shocks the conscience[.]" *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006).

[5] The Court points this out because the parties in the instant case appear to be confusing the standard for establishing municipal liability under § 1983 with the standard for establishing the underlying violation of the Due Process Clause. Document No. 9, pp. 14-16; Document No. 13, pp. 14-16.

standard for establishing the underlying constitutional violation. *Collins*, 503 U.S. at 122, 112 S. Ct.

at 1067, 117 L. Ed.2d at 271. Referring to its prior decision in *Canton v. Harris*, 489 U.S. 378, 109 S.

Ct. 1197, 103 L. Ed.2d 412 (1989), the Court stated as follows:

> We did not suggest that all harm-causing municipal policies are actionable under § 1983 or that all such policies are unconstitutional. Moreover, we rejected the city's argument that only unconstitutional policies can create municipal liability under the statute. *Id.* at 387. Instead, we concluded that if a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. In particular, we held that the inadequate training of police officers could be characterized as the cause of the constitutional tort if–and only if–the failure to train amounted to "deliberate indifference" to the rights of persons with whom the police come into contact. *Id.* at 388. Although the term "deliberate indifference" has been used in other contexts to define the threshold for finding a violation of the Eighth Amendment, see *Estelle v. Gamble*, 429 U.S. 97, 104, 50 L. Ed.2d 251, 97 S. Ct. 285 (1976), as we have explained, that term was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents.

*Collins*, 503 U.S. at 123-24, 112 S. Ct. at 1067-68, 117 L. Ed.2d at 272 (footnotes omitted).

Accordingly, the cases discussing the deliberate indifference standard for purposes of municipal liability

have nothing to do with whether the allegations contained in Taylor's complaint are sufficient to

establish a violation of the Fourteenth Amendment.[6] Their relevance is limited to the question of

whether the District can be held liable for any constitutional violations committed by its employees.

---

[6] The confusion of the parties in this case regarding the distinction between these separate inquiries may be due, in part, to the language of the U.S. Court of Appeals for the Third Circuit in *Brown v. Commonwealth of Pennsylvania Department of Health Emergency Medical Services Training Institute.*, 318 F.3d 473 (3d Cir. 2003). In *Brown*, the Court of Appeals engaged in a cursory review of these standards without highlighting the distinction between them. *Brown*, 318 F.3d at 479. It appears that the purpose of the language in *Brown* was to explain the level of culpability typically associated with the deliberate indifference standard. *Id.* In any event, the Supreme Court's language in *Collins* makes it clear that the standard for imposing liability on a municipality under § 1983 should not be confused with the standard for establishing a violation of the Due Process Clause. *Collins*, 503 U.S. at 123-24, 112 S. Ct. at 1067-68, 117 L. Ed.2d at 272.

12

To reach that step, of course, Taylor must first establish that a constitutional violation occurred.

The second category of deliberate indifference cases are those discussing the standard for establishing an Eighth Amendment violation.[7] In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment requires prison authorities to provide medical care for those who are incarcerated. *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290, 50 L. Ed.2d at 259. The Court explained that "deliberate indifference" to the serious medical needs of prisoners constituted the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. *Id.*, 429 U.S. at 104, 97 S. Ct. at 291, 50 L. Ed.2d at 260. The Court went on to state as follows:

[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.*, 429 U.S. at 105-06, 97 S. Ct. at 292, 50 L. Ed.2d at 261. In *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed.2d 666 (2002), the Court noted that "deliberate indifference to the inmates' health or safety" is a *subjective* state of mind that may be inferred from the fact that "the risk of harm is obvious." *Hope*, 536 U.S. at 738, 122 S. Ct. at 2514, 153 L. Ed.2d at 677.

---

[7] *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001), which is cited in Taylor's brief, falls into this second category. Document No. 13, p. 15. Because Taylor does not allege a violation of the Eighth Amendment, her reliance on *Beers-Capitol* is misplaced.

13

The cases discussing the deliberate indifference standard in the Eighth Amendment context are not controlling in this case. It is, of course, true that when state officials violate the Eighth Amendment's Cruel and Unusual Punishment Clause, they violate the Due Process Clause of the Fourteenth Amendment. *United States v. Georgia*,__U.S.__, 126 S. Ct. 877, 881, 163 L. Ed.2d 650, 658 (2006). Nonetheless, Taylor's complaint alleges violations of the Due Process Clause which are different from those alleged by prisoners in the Eighth Amendment context. While the cases discussing the "deliberate indifference" standard with respect to the Eighth Amendment may help to explain the meaning of that term, and the precise level of culpability associated with it, they do not establish that the standard itself is specifically applicable to this case.

The third category of cases discussing this level of culpability are those in which deliberate indifference to the welfare of an individual is itself sufficient to establish a violation of the Due Process Clause. *Lewis*, 523 U.S. at 849-50, 118 S. Ct. at 1718-19, 140 L. Ed.2d at 1059-60. Generally speaking, this category of cases includes those in which the factual situation is analogous to those typically found in the Eighth Amendment context. *Id.* For instance, in *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed.2d 605 (1983), the Supreme Court explained that the Due Process Clause required the City of Revere to provide medical care to an individual who was injured while being apprehended by police. *City of Revere*, 463 U.S. at 243-45, 103 S. Ct. at 2983, 77 L. Ed.2d at 611. Since no formal adjudication of guilt had occurred, the protections of the Eighth Amendment were not applicable. *Id.* Nevertheless, the Court concluded that the rights of a pretrial detainee were "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.*, 463 U.S. at 244, 103 S. Ct. at 2983, 77 L. Ed.2d at 611. State officials who are deliberately

14

indifferent to the medical needs of a pretrial detainee violate the Due Process Clause, just as state officials who are deliberately indifferent to the medical needs of an incarcerated convict violate the Cruel and Unusual Punishment Clause.[8]

Taylor does not allege facts which resemble those found in the prison context. The facts alleged in her complaint are not analogous to those which allege violations of the Eighth Amendment. The inquiry, however, does not end there. The Supreme Court has never expressly limited the category of cases in which deliberate indifference suffices to establish a Fourteenth Amendment violation to include only those in which the plaintiff alleges facts analogous to those typically found in the prison setting. In *Lewis*, the Court left open the possibility that this category is broad enough to encompass other scenarios. *Lewis*, 523 U.S. at 850, 118 S. Ct. at 1718-19, 140 L. Ed. 2d at 1060. The Court explained that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another," and that its "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *Id.*, 523 U.S. at 850, 118 S. Ct. at 1718, 140 L. Ed.2d at 1060.

In determining the appropriate level of culpability applicable in the instant case, this Court is guided by the Supreme Court's discussion in *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). *Farmer* was a case involving the Cruel and Unusual Punishment Clause.

---

[8] Even in the prison context, the deliberate indifference standard is not automatically applicable. In *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed.2d 251 (1986), the Supreme Court held that where a prison security measure is undertaken to resolve a disturbance that poses serious risks to the safety of inmates and prison officials, the question of "whether the measure taken inflicted unnecessary and wanton pain and suffering turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085, 89 L. Ed.2d at 261 (internal quotation marks omitted).

15

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[.]" *Farmer*, 511 U.S. at 836, 114 S. Ct. at 1978, 128 L. Ed.2d at 824. "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to [an individual] is the equivalent of recklessly disregarding that risk." *Id.*, 511 U.S. at 836, 114 S. Ct. at 1978, 128 L. Ed.2d at 825. In *Farmer*, the Supreme Court explained the difference between the standard of "recklessness" associated with the civil law and that associated with the criminal law. *Id.* "The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* On the other hand, the criminal law "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." *Id.*, 511 U.S. at 837, 114 S. Ct. at 1978-79, 128 L. Ed.2d at 825. Moving on to decide which standard was applicable in *Farmer*, the Court stated as follows:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.*, 511 U.S. at 837-38, 114 S. Ct. at 1979, 128 L. Ed.2d at 825-26 (citations omitted).

The *Farmer* standard is relevant for purposes of the instant case because of the language in a few recent decisions of the U.S. Court of Appeals for the Third Circuit. In *Nicani v. Morra*, 212 F.3d 798 (3d Cir. 2000), the Court of Appeals noted that, after *Farmer*, federal appellate courts had "shown a tendency to apply a purely subjective deliberate indifference standard" outside of the Eighth Amendment context.[9] *Nicani*, 212 F.3d at 812, n. 10. Very recently, in *Kaucher*, the Court of Appeals discussed the applicability of the *Farmer* standard in cases involving the Due Process Clause. *Kaucher*, 455 F.3d at 428 n.5. The Court of Appeals expressed its reluctance to apply an objective standard in the substantive due process context, since doing so would move the concept of deliberate indifference "closer to the pole of negligence." *Id.* For this reason, the Court is convinced that the application of an objective deliberate indifference standard would be inappropriate in the present case. It is unclear whether a subjective showing of deliberate indifference would be sufficient for establishing a violation of the Due Process Clause under these circumstances, since the actual inquiry is whether Taylor's complaint alleges conscience-shocking conduct. *Lewis*, 523 U.S. at 854-55, 118 S. Ct. at 1720-21, 140 L. Ed.2d at 1062-63. Nevertheless, the Court assumes *arguendo* that Taylor could properly allege a violation of the Fourteenth Amendment by showing that the Defendants were deliberately indifferent, in the subjective sense, to the medical needs of Devin prior to the point at which the situation became an emergency.

---

[9] *Grant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 n.6 (2d Cir. 1999) (rejecting "should have known" standard in a due process action challenging the conduct of school officials and other defendants in responding to complaints of racial harassment); *Qian v. Kautz*, 168 F.3d 949, 955-56 (7th Cir. 1999) (applying the *Farmer* standard in a case involving a detainee's rights under the Due Process Clause); *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (same).

17

When it became apparent that Devin was in imminent danger, the situation gravitated closer to an emergency situation akin to that in *Lewis*, in which there was little or no time for actual *deliberation*. *Lewis*, 523 U.S. at 851, 118 S.Ct. at 1719, 140 L.Ed.2d at 1060. The Court of Appeals discussed the appropriate level of culpability applicable in the medical emergency context in *Ziccardi v. City of Philadelphia*, 288 F.3d 57 (3d Cir. 2002). In *Ziccardi*, the Court of Appeals explained that, in the context of a medical emergency, a plaintiff must show more than "subjective deliberate indifference" as that term is defined in *Farmer*. *Ziccardi*, 288 F.3d at 65. While it is not necessary for a plaintiff to prove an actual intent to cause harm under these circumstances, the applicable precedents require "proof of something less than knowledge that the harm was practically certain but more than knowledge that there was a substantial risk that the harm would occur." *Id.* at 66; *Rivas v. City of Passaic*, 365 F.3d 181, 195 (3d Cir. 2004). In the context of the present case, the alleged omissions of the Defendants during the medical emergency can only be said to be conscience-shocking if the Defendants "consciously disregarded, not just a substantial risk, but a *great risk* that serious harm would result" from their failure to act.[10] *Ziccardi*, 288 F.3d at 66 (emphasis added).

## 2.     Application of the Conscience-Shocking Standard

Taylor's complaint alleges a series of failures by the Defendants prior to September 24, 2003.

---

[10] It is arguable that *Ziccardi* is inapplicable in this case because Taylor does not allege that the Defendants' *actions* caused Devin's death. Instead, she alleges that their *omissions* caused his death. Document No. 1, pp. 10-11, ¶¶ 53-61. In *Ziccardi*, the plaintiff alleged that the defendants had taken *affirmative actions* which turned out to be harmful to the decedent's health. *Ziccardi*, 288 F.3d at 60. Whether this standard is applicable in an omission case is questionable. Nevertheless, the Court assumes *arguendo* that Taylor could allege a violation of the Due Process Clause without showing that the Defendants acted with an intent to harm Devin, and that the appropriate showing is the more relaxed standard discussed in *Ziccardi*. Even under this standard, her complaint does not allege facts sufficient to state a constitutional violation, since she does not allege that the Defendants' omissions evidenced a "conscious disregard" for the fact that their conduct would cause a "great risk of harm" to Devin's health.

She alleges that the District refused to purchase a nebulizer, that the relevant school officials failed to inform her of Devin's January 17, 2003, "episode of arduous breathing and lethargy," and that Myers regularly failed to administer Devin's medication during the course of the school year. Document No. 1, pp. 66-8, ¶¶ 28, 33, 37. Since these events occurred prior to the onset of the medical emergency, the applicable standard of culpability is the subjective deliberate indifference standard discussed in *Farmer*. Under this standard, Taylor must allege that the Defendants were "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and [that they actually drew] the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979, 128 L. Ed.2d at 825. The allegation that the District refused to purchase a nebulizer cannot be fairly read to allege that the District was aware that its refusal alone could create a substantial risk of serious harm. The only reasonable construction of this averment is that the District refused to *bear the cost* associated with the purchase of the nebulizer, and that the District expected Taylor to pay for it herself.[11] The failure of the school officials to inform Taylor of Devin's January 17, 2003, episode did not evidence the Defendants' awareness of a substantial risk of serious harm. Although Taylor alleges that Devin's teacher "expressed her realization that the child's symptoms during school were related to his eventual hospitalization," this *realization* occurred only in hindsight. Document No. 1, p. 7, ¶ 33. This conversation occurred when Taylor informed the teacher that Devin was in the hospital. *Id.* At that point, the relevant omission had already occurred. Taylor's complaint cannot be read to allege that any of the Defendants had an actual

---

[11] Taylor alleges that she ultimately purchased the nebulizer herself, but that it was never utilized to treat Devin's symptoms. Document No. 1, p. 6, ¶ 28. Nevertheless, she fails to identify a single situation in which the nebulizer should have been used.

awareness of a substantial risk of harm *at the time of the omission*.[12] Taylor's averment regarding the failure of Myers to administer Devin's medication alleges nothing more than negligence. Taylor's complaint states that "the child was required to remind the teacher of the medication in order to receive appropriate treatments." *Id.*, p. 8, ¶ 37. No allegation is made that Myers *refused* to administer Devin's medication. The fact that Myers forgot about the medication does not indicate that she was *aware* of a substantial risk of harm. Since negligence is categorically below the threshold for establishing a violation of the Due Process Clause, a lapse in memory cannot, *in any circumstance*, qualify as conscience-shocking. *Davidson*, 474 U.S. at 348, 106 S. Ct. at 671, 88 L. Ed.2d at 683.

When Devin informed Myers that he was having difficulty breathing, Myers told him to lay his head on his desk. Document No. 1, p. 8, ¶ 38. Taylor alleges that Myers "failed to recognize and/or appreciate" the significance of Devin's symptoms. *Id.*, pp. 10-11, ¶ 56. This averment implicitly acknowledges that Myers drew no inference that a substantial risk of serious harm to Devin's health existed. Consequently, under the subjective deliberate indifference standard, Taylor's complaint does not allege that the Defendants engaged in conscience-shocking conduct with respect to Devin prior to the commencement of the medical emergency.

When another student informed Myers that Devin was turning purple, the situation moved into the emergency scenario discussed in *Ziccardi*. At that point, any act or omission alleged by Taylor could only be deemed conscience-shocking upon a showing that the relevant Defendants "consciously

---

[12] In addition to alleging that she was never informed of Devin's breathing episode of January 17, 2003, Taylor alleges that the school nurse failed to provide treatment to Devin on that occasion. Document No. 1, p. 7, ¶ 34. It is not clear, however, whether Taylor's reference to "treatment" refers to the use of the nebulizer, or simply medical treatment in general.

disregarded, not just a substantial risk, but a great risk that serious harm would result[.]" *Ziccardi*, 288 F.3d at 66. Taylor alleges that, despite claims by the Defendants to the contrary, they did not initiate efforts to resuscitate Devin after discovering his condition. Document No. 1, p. 11, ¶ 60. Nevertheless, she does not allege that they *consciously disregarded a great risk* that their failure to begin resuscitative efforts would *itself* result in serious harm to Devin. After all, Taylor avers that the appropriate emergency medical officials were contacted. Document No. 1, p. 9, ¶ 44. The complaint, assumed to be true and reasonably construed in the manner most favorable to Taylor, alleges nothing more than woefully incompetent conduct on the part of the Defendants. Whatever might be said about the Defendants' duties under various legal doctrines, it is fair to say that their conduct did not violate the Due Process Clause.

## 3.     The Specific Theories Addressed by the Parties

In *Lewis*, the Supreme Court explained that "the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848, 118 S. Ct. at 1717, 140 L. Ed.2d at 1058-59. It is for this reason that all cases falling between these two ends turn on fact-specific distinctions. The present case is no exception. With that in mind, the Court now turns to the context-specific arguments made by Taylor.

Taylor contends that the Defendants had a "special custodial relationship" with Devin and that, because of that relationship, the Defendants were *constitutionally required* to come to Devin's aid. Document No. 13, pp. 11-14. This theory has its genesis in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed.2d 249 (1989), in which the

21

Supreme Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200, 109 S. Ct. at 1005, 103 L. Ed.2d at 261. In support of her argument, Taylor relies on the decisions of the Court of Appeals in *Black v. Indiana Area School District*, 985 F.2d 707 (3d Cir. 1993), *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir. 1992), and *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989).[13] It is difficult to fathom how these cases help Taylor's argument more than they hurt it. In all three cases, the Court of Appeals made it clear that Pennsylvania's compulsory school attendance law did not transform the relationship between students and schools into a *custodial* relationship for purposes of the *DeShaney* standard. *Black*, 985 F.2d at 713-14; *D.R.*, 972 F.2d at 1370-72; *Stoneking*, 882 F.2d at 723-24. In *D.R.*, the Court of Appeals stated as follows:

> By requiring D.R. to attend assigned classes at Middle Bucks as part of her high school educational program, and authorizing officials to engage in disciplinary control over the students, the school defendants did not restrict D.R.'s freedom to the extent that she was prevented from meeting her basic needs. Thus, the school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*, particularly when their channels for outside communication were not totally closed.

*D.R.*, 972 F.2d at 1372 (citation omitted). Taylor does not argue that Pennsylvania law prevented her from taking Devin out of the school building for the purpose of attending to his medical needs. Under

---

[13] As noted earlier, Taylor confuses the standard for holding a municipality liable under § 1983 for the acts of its employees with the standard for establishing an underlying constitutional violation. Her reliance on *Stoneking* is misplaced. Document No. 13, p. 14. The language in *Stoneking* upon which she relies deals with the standard for determining whether a school district can be held liable for constitutional violations committed by its employees. *Stoneking*, 882 F.2d at 725. It has absolutely nothing to do with whether Taylor's complaint alleges a violation of the Due Process Clause. *Collins*, 503 U.S. at 123-24, 112 S. Ct. at 1067-68, 117 L. Ed.2d at 272.

Pennsylvania law, "a parent is justified in withdrawing [her] child from a school where the health and welfare of the child is threatened." *Zebra v. Pittsburgh Sch. Dist.*, 296 A.2d 748, 751 (Pa. 1972). Taylor does not allege that the Defendants affirmatively prevented Devin from seeking medical assistance on his own. For these reasons, Devin was not in *custody* for purposes of the standard discussed in *DeShaney*.

Taylor argues that the IDEA placed an affirmative duty on the Defendants to safeguard Devin's welfare while he was at school. Document No. 13, p. 13. For purposes of the Defendants' Motion to Dismiss, this argument is unavailing. The question before the Court is whether the Defendants had a *constitutional* obligation to ensure that Devin was afforded adequate medical care. The Supreme Court has consistently held that statutory and common-law protections do not transform ordinary legal doctrines into constitutional mandates.[14] *Town of Castle Rock v. Gonzales*, __U.S.__, 125 S. Ct. 2796, 2810, 162 L. Ed.2d 658, 676-77 (2005); *DeShaney*, 489 U.S. at 203, 109 S. Ct. at 1007, 103 L. Ed.2d at 264.

Taylor also argues that her complaint alleges the elements necessary to state a due process claim pursuant to the "state-created danger" theory. In *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Court of Appeals enumerated the elements necessary for establishing a constitutional violation on the basis of this theory. *Bright*, 443 F.3d at 281. In order to state a substantive due process

---

[14] The Court acknowledges that conduct which demonstrates an indifference to the needs of a disabled child may be more likely to reach the conscience-shocking threshold than conduct which demonstrates a similar indifference to the needs of a nondisabled child, given the fact-specific nature of the inquiry. *Lewis*, 523 U.S. at 848-50, 118 S. Ct. at 1717-19, 140 L. Ed.2d at 1058-60. Taylor's argument, however, is not based on the conscience-shocking standard. Instead, she purports to rely on the IDEA for the purpose of establishing the existence of a *custodial* relationship between Devin and the Defendants. Document No. 13, pp. 11-14. Whether the IDEA imposed a statutory duty on the Defendants to attend to Devin's medical needs has nothing to do with whether Devin was in *custody* for purposes of the *DeShaney* standard.

claim under this theory, a plaintiff must show that: (1) the harm ultimately caused was foreseeable and

fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a

relationship between the State and the plaintiff existed such that the plaintiff was a foreseeable victim

of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm

brought about by the State's actions, as opposed to a member of the public in general; and (4) a state

actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that

rendered the plaintiff more vulnerable to danger than had the State not acted at all.[15]  *Id.* at 281.

Assuming *arguendo* that Taylor's complaint satisfies the first and third elements necessary to

establish a "state-created danger" claim under the Due Process Clause, it clearly fails to satisfy the

second and fourth elements. For the reasons discussed earlier, Taylor's complaint does not allege that

any of the Defendants acted with a conscience-shocking level of culpability.[16] Therefore, she cannot

satisfy the second "state-created danger" element. Furthermore, with respect to the fourth element,

---

[15] Taylor states these elements in a slightly different way, relying on *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996). *Kneipp* was decided before *Lewis*. The second element described in *Kneipp* required the plaintiff to demonstrate that the state actor exhibited a "willful disregard" for the safety of the plaintiff. *Kneipp*, 95 F.3d at 1208. In the aftermath of *Lewis*, it is now clear that a plaintiff must show that the state actor's level of culpability was conscience-shocking. *Lewis*, 523 U.S. at 836, 118 S. Ct. at 1711-12, 140 L. Ed.2d at 1051. The recent decision of the Court of Appeals in *Bright* incorporates the proper standard. *Bright*, 443 F.3d at 281.

[16] In *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), the Court of Appeals held that "in a state-created danger case, when a state actor is not confronted with a hyperpressurized environment but nonetheless does not have the luxury of proceeding in a deliberate fashion, the relevant question is whether the officer consciously disregarded a great risk of harm." *Sanford*, 456 F.3d at 310 (citations omitted). This standard incorporates the *Ziccardi* test "insofar as it requires that the defendants disregard a great risk of serious harm rather than a substantial risk." *Id.* This Court's earlier discussion about the applicable level of culpability deals with *Ziccardi* rather than *Sanford*. This is because the earlier discussion dealt more generally with the facts of this case, whereas the *Sanford* standard is specifically tailored for state-created danger cases. Since Taylor advances multiple theories in support of her complaint, rather than a single theory, the Court's discussion about the applicable level of culpability was not limited to that associated with only one theory. Furthermore, with respect to the period of time after Myers became aware of the fact that Devin was turning purple, the Court assumes *arguendo* that the *Ziccardi* and/or *Sanford* standard is applicable. Nevertheless, it is at least arguable that the situation was hyperpressurized at that point, thereby requiring Taylor to show that the Defendants acted (or failed to act) with an intent to cause harm. *Id.* at 309.

"liability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *Id.* at 282 (emphasis in original). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Id.* In *Bright*, the Court of Appeals explained that it had "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." *Id.*

Taylor's complaint alleges no affirmative act on the part of the Defendants which contributed to Devin's death. Instead, it alleges a long series of omissions. Document No. 1, pp. 5-12, ¶¶ 21-66. Under *Bright*, a plaintiff cannot establish a substantive due process violation pursuant to the "state-created danger" theory without alleging affirmative acts on the part of a defendant. Since Taylor fails to allege a single affirmative act which contributed to Devin's death, her complaint fails to state a claim upon which relief can be granted.[17]

Taylor also argues that her complaint states a "failure to train" claim under § 1983. Document No. 13, pp. 14-15. She relies on *Reitz v. County of Bucks*, 125 F.3d 139 (3d Cir. 1997) for the proposition that "the inadequacy of training may itself serve as the basis for liability, where it amounts to deliberate indifference." Document No. 13, p. 15. She contends that, in order to be successful, she

---

[17] The Court acknowledges that Taylor's complaint, construed in the manner most favorable to her, alleges that one of the Defendants gave false information to the emergency medical providers when they were traveling to the school. Document No. 1, p. 9, ¶ 45. This averment alleges that somebody reported that resuscitative efforts had been employed, and that Devin had responded by breathing. *Id.* The complaint further alleges that no such resuscitative efforts had actually been initiated. *Id.* at ¶ 53. However, the complaint does not allege that this false report *itself* contributed to Devin's death. In fact, it alleges that the emergency medical responders immediately began resuscitative efforts after arriving at the school. *Id.* at ¶ 47. Absent an allegation that the false report somehow *caused* Devin's death, by preventing the first responders from acting or otherwise, Taylor's false report averment cannot save her due process claims from the Defendants' Motion to Dismiss.

must establish that the Defendants were aware of, and disregarded, an excessive risk to Devin's *health and safety*. *Id.* The wording of Taylor's argument itself convinces the Court that she fundamentally misunderstands the "failure to train" inquiry.

In *Reitz*, the Court of Appeals stated as follows:

> Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged *constitutional deprivations* occurred.

*Reitz*, 125 F.3d at 145 (emphasis added). The language in *Reitz* discussing a municipality's liability for failing to train its employees has nothing to do with whether a plaintiff can establish an underlying violation of the Constitution. In order to defeat the Defendants' Motion to Dismiss, Taylor must first establish a violation of the Due Process Clause. If she were able to show that an employee of the District violated the constitutional rights of either Devin or herself, the "failure to train" line of cases would be relevant for the purpose of determining whether the District could be held liable under § 1983 for the failure to train its employees. The language in *Reitz* regarding the "failure to train" theory speaks to a municipality's duty to train its employees for the purpose of preventing *constitutional violations*. It does not speak to the question of whether the District had a duty to train its employees for the purpose of *preventing Devin's death*.

This point is further illustrated by *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001), which is also cited in Taylor's brief. Document No. 13, p. 15. In *Beers-Capitol*, the Court of Appeals discussed the standard for holding a supervisor in a juvenile detention facility liable for Eighth

26

Amendment violations committed by his subordinates. The Court of Appeals explained this standard

as follows:

> [T]o hold a supervisor liable because his policies or practices led to an *Eighth Amendment violation*, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the *Eighth Amendment injury*; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the *injury* resulted from the policy or practice.

*Beers-Capitol*, 256 F.3d at 134 (emphasis added). The *injury* for which the supervisor could be held

liable was the *constitutional violation*. Taylor's "failure to train" argument confuses the municipality

liability standard with the standard governing the underlying constitutional inquiry. In order to hold the

District liable under *Reitz* and *Beers-Capitol*, Taylor would have to show that an employee of the

District committed a constitutional violation which could have been prevented by adequate training.

It is not enough for her to show that, with proper training, the District's employees could have prevented

Devin's death. Although the omissions of the District's employees may have been tortious under any

of a number of statutory or common-law mandates, it is clear that they were not *unconstitutional*.[18]

For these reasons, Taylor's complaint cannot be reasonably construed to allege a violation of

the Due Process Clause of the Fourteenth Amendment. Accordingly, pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Court must grant the Defendants' Motion to Dismiss with respect to Counts IV

---

[18] For this reason, Taylor's argument that the District "maintained a consistent pattern or policy deliberately indifferent to the needs of children suffering [from] asthma" is unavailing. Document No. 13, p. 16. The dispositive question is not whether the District was deliberately indifferent to the medical needs of its students, but rather whether the District's deliberate indifference to the *constitutional rights* of its students was the "moving force" behind an actual *constitutional violation*. *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 400, 117 S. Ct. 1382, 1386, 137 L. Ed.2d 626, 636 (1997).

and V of Taylor's complaint.

When a motion to dismiss claims set forth in a complaint is granted pursuant to FED. R. CIV. P. 12(b)(6) , a district court will normally provide the plaintiff the opportunity to amend the complaint at least once to correct any defects unless it is clear that any further amendment cannot provide the necessary corrections. *Heller v. Fulare*, 371 F. Supp. 2d 743, 749 (W.D. Pa. 2005) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004) (footnotes omitted)). Accordingly, Plaintiff will be granted leave to file an amended complaint regarding Counts IV and V within twenty days of the date of the Order entered as a result of this Memorandum Opinion.

## B.    THE ADDITIONAL MATTERS RAISED IN THE MOTION TO DISMISS

The Defendants, in their Motion to Dismiss, seek the dismissal of Counts VI and VII of Taylor's complaint and the dismissal of all punitive damages claims against the individual defendants. Document No. 8, pp. 7-9, ¶¶ 33-46. They also seek the dismissal of the claims against Ritchey, Myers and Adams, who have been sued in their personal capacities. *Id.*, pp. 3-4, ¶¶ 2-10. In the alternative, the Defendants seek a more definite statement with respect to the allegations against Ritchey, Myers and Adams. *Id.*, pp. 9-10, ¶¶ 47-53. The Court now turns to these additional matters.

## 1.    The Pennsylvania Law Claims

In Counts VI and VII of her complaint, Taylor seeks damages for Devin's death pursuant to 42 Pa.C.S. §§ 8301 and 8302. Document No. 1, p. 13, ¶¶ 72-73. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). In their Motion to Dismiss, the Defendants seek the dismissal of these Pennsylvania law claims on the ground that they are barred by Pennsylvania's

28

Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq.* Document No. 9, pp. 19-20.

"[L]ocal agencies in Pennsylvania generally are immune from suit for damages caused by an act of the local agency or the negligence of the agency's employees." *Walker v. Eleby*, 842 A.2d 389, 392 (Pa. 2004). In light of the fact that the Pennsylvania General Assembly sought to insulate political subdivisions from exposure to tort liability when it enacted the Political Subdivision Tort Claims Act, the exceptions to immunity found in 42 Pa.C.S. § 8542 must be narrowly construed. *Id.* In the instant case, the Defendants argue that liability under §§ 8301 and 8302 is foreclosed by § 8541. Document No. 9, pp. 19-20. Taylor's brief does not address this issue.[19] Document No. 13. Given the fact that

---

[19] Taylor mentions the Political Subdivision Tort Claims Act only within the context of a discussion about her constitutional claims. Document No. 13, p. 9. The Defendants contend that Taylor cannot prevail in her Pennsylvania law claims *because* her complaint fails to state a violation of the Due Process Clause. Document No. 9, p. 19. In truth, Taylor's Pennsylvania law claims are barred by 42 PA. C.S. § 8541 *regardless* of whether her complaint alleges a violation of the Due Process Clause. The question of whether Taylor has a cause of action under 42 U.S.C. § 1983 has nothing to do with whether she has an independent cause of action under Pennsylvania law. It is clear that immunities provided to state agencies and officials under state law do not immunize those agencies and officials from suits brought pursuant to § 1983. *Martinez v. California*, 444 U.S. 277, 284, 100 S. Ct. 553, 558, 62 L. Ed.2d 481, 488-89 n.8 (1980). By virtue of the Supremacy Clause, a state immunity statute cannot defeat a cause of action arising under federal law. U.S. CONST., art. VI. That is fundamental to our constitutional structure. However, it does not follow that the existence of a federal cause of action impacts the operation of a state immunity statute *with respect to a plaintiff's claims arising under state law.* It is, of course, true that the application of a state immunity statute could itself violate the Due Process Clause under certain circumstances. For instance, if a state official deprives a plaintiff of liberty or property in an unauthorized manner, an attempt by the State to immunize the official's conduct would deprive the plaintiff of an adequate postdeprivation remedy. Consequently, the unauthorized deprivation would be *without due process of law*, in violation of the Fourteenth Amendment. *Albright v. Oliver*, 510 U.S. 266, 281-86, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994) (Kennedy, J., concurring in judgment); *Zinermon v. Burch*, 494 U.S. 113, 139, 110 S. Ct. 975, 990, 108 L. Ed.2d 100, 123 (1990) (O'Connor, J., dissenting); *Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S. Ct. 1908, 1917, 68 L. Ed.2d 420, 433-34 (1981). In this case, Taylor does not allege a procedural due process violation. If a state official had *deprived* her or Devin of life, liberty or property in a manner unauthorized by Pennsylvania law, the application of the immunity statute would most likely be unconstitutional. *Id.* The question of whether a *deprivation* occurred would not depend on whether the state official acted in good faith, but rather on whether that official was aware of the fact that he was depriving Taylor or Devin of life, liberty or property. The question of whether a *deprivation* has occurred depends on whether the State *deliberately* (or perhaps recklessly) deprived the plaintiff of a liberty or property interest, and a State cannot escape the requirements of the Due Process Clause by characterizing its failure to follow proper procedures as *negligence. Daniels v. Williams*, 474 U.S. 327, 333-34, 106 S. Ct. 662, 666, 88 L. Ed.2d 662, 670 (1986) ("We think the relevant action of the prison officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause."). Nonetheless, Taylor does not question the adequacy of Pennsylvania's postdeprivation remedies in this case. Even if she were asserting a procedural due process violation, it is doubtful that she could prevail on

29

Taylor has effectively waived this issue, as well as the Court's conclusion that her claims are insufficient to surmount the hurdle imposed by the immunity statute, the Court must grant the Defendants' Motion to Dismiss with respect to Counts VI and VII of Taylor's complaint. Plaintiff will be granted leave to file an amended complaint regarding Counts VI and VII within twenty days of the date of the Order entered as a result of this Memorandum Opinion.

## 2.     Punitive Damages

The Defendants seek the dismissal of the punitive damages claims against Ritchey, Myers and Adams. Document No. 8, pp. 9-10, ¶¶ 43-46. They contend that Taylor's complaint fails to allege the requisite level of culpability necessary to obtain punitive damages under § 1983, and that punitive damages are not an available remedy under the IDEA, the Rehabilitation Act, and the ADA. *Id.* at ¶¶ 44-46. While noting that punitive damages are an available remedy under § 1983, Taylor makes no argument with respect to the availability of punitive damages under the other statutes. Document No. 13, pp. 16-17. The Court has already determined that the Defendants' Motion to Dismiss must be granted with respect to Taylor's claims under § 1983.[20] Since the Court agrees with the Defendants' argument that punitive damages are not an available remedy under the IDEA, the Rehabilitation Act, and the ADA, the Defendants' Motion to Dismiss must be granted with respect to the punitive damages claims against Ritchey, Myers and Adams. *Barnes, Etc. v. Gorman*, 536 U.S. 181, 189-90, 122 S. Ct.

---

the averments in her complaint. *Daniels*, 474 U.S. at 333, 106 S. Ct. at 666, 88 L. Ed.2d at 669 ("Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required.")(emphasis in original; internal quotation marks omitted). In any event, since Taylor's complaint alleges substantive due process violations rather than procedural due process violations, the question of whether she can proceed with her Pennsylvania law claims has absolutely nothing to do with whether she can proceed with her claims under § 1983.

[20] The Court notes that the only counts in Taylor's complaint brought pursuant to 42 U.S.C. § 1983 are those alleging violations of the Due Process Clause of the Fourteenth Amendment. Document No. 1, pp. 12-13, ¶¶ 67-73.

2097, 2103, 153 L. Ed.2d 230, 239 (2002); *Hesling v. The Avon Grove Sch. Dist.*, 428 F. Supp. 2d 262, 273 (E.D. Pa. 2006). Since the Plaintiff is being granted leave to amend her § 1983 claims, the Plaintiff will also be granted leave to file an amended complaint with regard to punitive damages but only with regard to the § 1983 claims. The dismissal of the punitive damages claims with regard to the IDEA, the Rehabilitation Act, and the ADA is with prejudice.

## 3. The Claims Against the Individual Defendants

The Defendants, in their Motion to Dismiss, request that the Court dismiss all claims against Ritchey, Myers and Adams insofar as those individuals have been sued in their personal capacities. Document No. 8, pp. 3-4, ¶¶ 2-10. In the alternative, the Defendants seek a more definite statement under Federal Rule of Civil Procedure 12(e). *Id.*, pp. 10-11, ¶¶ 47-53. For the reasons that follow, the Court cannot definitively determine, at this stage, the issue of whether Taylor may proceed against Ritchey, Myers and Adams in their personal capacities.

The Defendants base their argument on the doctrine of qualified immunity. Document No. 9, pp. 7-10. They contend that Ritchey, Myers and Adams should be dismissed as defendants, and that their names should be removed from the caption of the case. *Id.*, pp. 9-10. The argument advanced by the Defendants is that Taylor's complaint fails to allege that Ritchey, Myers and Adams violated clearly established rights of which a reasonable state official would be aware.[21] *Id.* The Defendants' brief, of

---

[21] The qualified immunity analysis is a twofold inquiry. "First, the court must examine whether the alleged constitutional or statutory violations were 'clearly established' at the time of the alleged violations." *Blake v. Wright*, 179 F.3d 1003, 1007 (6ᵗʰ Cir. 1999). "Once it is determined that the right is clearly established, the court then must decide whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights. Such a test reflects an objective standard, making the official's subjective intent irrelevant." *Id.* at 1008 (citations and footnotes omitted).

course, was filed before the decision of the Court of Appeals in *Thomas v. Independence Township*, 2006 U.S. App. LEXIS 23685 (3d Cir. 2006), which makes it clear that "a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense[.]" *Thomas*, 2006 U.S. App. LEXIS 23685 at 2. In light of *Thomas*, the Defendants are not entitled to the relief sought in their Motion to Dismiss on the basis of Taylor's failure to plead facts sufficient to overcome an anticipated qualified immunity defense.

The Court's analysis in this case is further complicated by the fact that the Defendants apparently assume (rather than argue) that Ritchey, Myers and Adams cannot be sued in their personal capacities under the IDEA, the Rehabilitation Act and the ADA. In her brief, Taylor argues that her complaint alleges facts which could establish violations of the IDEA by the individual defendants. Document No. 13, pp. 7-9. While the Defendants have successfully convinced the Court that Taylor's constitutional claims must be dismissed, they have left the issue of individual liability under the IDEA, the Rehabilitation Act and the ADA wholly unaddressed. Their argument, even if meritorious, is insufficient to entitle them to the relief that they seek.

In *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 122 S. Ct. 511, 151 L. Ed.2d 489 (2001), the Supreme Court dismissed a writ of certiorari as improvidently granted. *Adarand Constructors, Inc.*, 534 U.S. at 105, 122 S. Ct. at 511-12, 151 L. Ed.2d at 493. The Court's action was based, in part, on the fact that the petitioner assumed that it had standing even though the U.S. Court of Appeals for the Tenth Circuit had determined that the petitioner *did not* have standing. *Id.*, 534 U.S. at 109-10, 122 S. Ct. at 514, 151 L. Ed.2d at 495-96. The petitioner did not challenge enough of the decision below to entitle it to the relief sought, and the Court declined to undertake a "threshold examination" into the

32

question of whether the petitioner had standing to challenge the applicable statutes and regulations that were the subject of its argument on the merits. *Id.* It was incumbent upon the petitioner to articulate a complete argument. Assuming that subject-matter jurisdiction is properly invoked under Article III of the Constitution and the applicable jurisdictional statutes enacted by Congress, federal courts do not address issues *sua sponte* for the purpose of filling in the gaps left in the arguments made by litigants. For this reason, the Defendants in the instant case are not entitled to the dismissal of the personal-capacity claims against Ritchey, Myers and Adams. Even though they point out that Taylor's complaint does not specify which counts apply to which defendants, they make no argument whatsoever as to whether the individual defendants are amenable to, or otherwise immune from, suits brought under the IDEA, the Rehabilitation Act, or the ADA. Document No. 8, pp. 10-11. Taylor evidently believes that she can sue Ritchey, Myers and Adams under the IDEA. Document No. 13, p. 8. Since neither party advances arguments as to whether individuals can be sued under the IDEA, the Rehabilitation Act, and the ADA, the Court expresses no opinion as to whether Taylor can proceed against Ritchey, Myers and Adams under those statutes.

The ultimate disposition of the Defendants' Motion to Dismiss, as it relates to the claims against Ritchey, Myers and Adams, will have to wait for another day. In *Thomas*, the Court of Appeals stated as follows:

A defendant who makes a motion for a more definite statement under Rule 12(e) may join that motion with a Rule 12(b) motion to dismiss asserting the qualified immunity defense, which should be held in abeyance during the pendency of the Rule 12(e) motion. *Fed. R. Civ. P. 12(g)* ("A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party."). When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from

33

the plaintiff concerning the conduct underlying the claims for relief. Even when a defendant has not formally expressed the need for a definite statement, the district court has the discretion to order a more definite statement, in observance of the Supreme Court's mandate to facilitate an early resolution of the qualified immunity issue and in order to avoid a waste of judicial resources. *See Crawford-El, 523 U.S. at 600-01* (recognizing the district court's broad discretion to utilize civil procedures in a manner that is useful and equitable to the parties); *see also Fed. R. Civ. P. 1* ("The[] [rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). If the plaintiff provides a more definite statement in compliance with the district court's order, the defendant may, upon leave of court, supplement the Rule 12(b)(6) motion to dismiss by framing the qualified immunity argument within the factual context of the case. Once the motion has been supplemented, the Rule 12(b)(6) motion asserting qualified immunity should be expeditiously briefed and considered by the district court at the earliest stage in the litigation. Until the Rule 12(b)(6) motion is resolved, all discovery must be stayed. *See Harlow, 457 U.S. at 818*. Of course, if the plaintiff fails to provide a more definite statement within ten days after notice of the order or within such other time as the court may fix, the court may strike the pleading. *Fed. R. Civ. P. 12(e)*.

*Thomas*, 2006 U.S. App. LEXIS 23685 at 40-42. The Defendants have filed a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). Document No. 8, pp. 10-11, ¶¶ 47-53. Given the decision in *Thomas*, it is clear that Taylor had no pleading burden to prospectively overcome an anticipated qualified immunity defense raised by the individual defendants. However, the Defendants are entitled to a more definite statement so that they can frame their qualified immunity arguments within the factual context of this case.

The Court has determined that Counts IV, V, VI and VII of Taylor's complaint must be dismissed. Only Counts I, II and III remain, unless Plaintiff files an amended complaint within the permissible time period. The remaining counts allege violations of the IDEA, the Rehabilitation Act, and the ADA. With respect to Counts IV, V, VI and VII, the question as to whether the individual defendants are entitled to qualified immunity is now moot, unless an amended complaint is filed.

Nevertheless, the issue of whether they are entitled to qualified immunity with respect to Counts I, II and III remains an open question. If an amended complaint is filed then the qualified immunity issue will also need to be evaluated regarding the amended counts. This issue will have to be decided according to the framework outlined by the Court of Appeals in *Thomas*.

The Court must grant the Defendants' Motion for a More Definite Statement, and Taylor will have to specify which of the remaining three counts (and the amended counts), if any, are applicable to Ritchey, Myers and Adams. The Defendants will then have the opportunity to supplement their Motion to Dismiss by framing their qualified immunity arguments within the factual context of this case. *Thomas*, 2006 U.S. App. LEXIS 23685 at 42. The parties will then be able to brief the issue, which shall be considered by the Court thereafter. *Id.* The threshold inquiry for the Court will be a determination as to whether Taylor's allegations, if true, would entitle her to relief against the individual defendants. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed.2d 666, 676 (2002). This determination will surely include a conclusion as to whether individual liability exists under the IDEA, the Rehabilitation Act, or the ADA. The Court will not address this issue now, since it has not been briefed by the parties. When the issue is fully argued and briefed, the Court will be in a better position to determine: (1) whether Taylor's allegations would entitle her to relief against the individual defendants under the IDEA, the Rehabilitation Act, and the ADA;[22] if so, (2) whether qualified immunity may be invoked by individual defendants sued under those statutes; and (3) if so, whether Ritchey, Myers and Adams are entitled to qualified immunity within the context of this case. *Blake v.*

---

[22] The amended counts, if any, will also have to be considered.

*Wright*, 179 F.3d 1003, 1011-14 (6th Cir. 1999) (discussing the applicability of the qualified immunity defense with respect to statutory violations).

## C. CONCLUSION

In summary, Taylor's complaint alleges no violation of the Fourteenth Amendment. Accordingly, the Defendants' Motion to Dismiss is granted with respect to Counts IV and V. Document No. 8, pp. 4-8, ¶¶ 11-32. Because Counts VI and VII of Taylor's complaint do not allege conduct sufficient to overcome the Defendants' immunity under the Political Subdivision Tort Claims Act, and because Taylor has waived any arguments that she may have to the contrary, the Defendants' Motion to Dismiss is granted with respect to Counts VI and VII. *Id.*, pp. 8-9, ¶¶ 33-42. Given the unavailability of punitive damages under the IDEA, the Rehabilitation Act, and the ADA, and since Taylor has based her entire argument regarding punitive damages on the availability of punitive damages on the basis of the now dismissed claims under § 1983, the Defendants' Motion to Dismiss is granted with respect to Taylor's claims for punitive damages against the individual defendants. *Id.*, pp. 9-10, ¶¶ 43-46. To the extent that the Defendants' Motion to Dismiss the claims against the individual defendants is based on an assertion of qualified immunity with respect to Taylor's constitutional claims, it is rendered moot by the Court's determination that Counts IV and V of Taylor's complaint fail to state claims upon which relief can be granted. *Id.*, pp. 3-4, ¶¶ 2-10. The Defendants' Motion for a More Definite Statement is granted. *Id.*, pp. 10-11, ¶¶ 47-53. To the extent that the Defendants' Motion to Dismiss the claims against the individual defendants is based on an assertion of qualified immunity with respect to Counts I, II and III of Taylor's complaint, the Court will reserve judgment until after the parties have proceeded

36

in accordance with the framework established in *Thomas*.[23]

    An appropriate Order follows.

---

[23] In the event an amended complaint is filed, then evaluation of the amended counts will, of course, have to be conducted in addition to the evaluation set forth in this Conclusion.

AND NOW, this 28th day of September, 2006, this matter coming before the Court on the Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Alternative Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) (Document No. 8), IT IS HEREBY ORDERED THAT the Defendants' Motion to Dismiss is GRANTED IN PART as to the Plaintiff's claims under 42 U.S.C. § 1983 and Pennsylvania law, and as to the Plaintiff's claims for punitive damages; Plaintiff is granted leave of court to file an amended complaint regarding Counts IV, V, VI, VII, and punitive damages with regard to the § 1983 claims only; the dismissal of the punitive damages claims with regard to the IDEA, the Rehabilitation Act, and the ADA is with prejudice; and IT IS FURTHER ORDERED THAT the Defendants' Motion for a More Definite Statement is GRANTED. With respect to Counts I, II and III (and any amended counts if an amended complaint is filed), insofar as they are asserted against the individual defendants, the parties are HEREBY ORDERED to proceed in accordance with the decision of the U.S. Court of Appeals for the Third Circuit in *Thomas v. Independence Township*, 2006 U.S. App. LEXIS 23685, in a manner consistent with this opinion.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:    **All Counsel of Record**

38